No. 2--05--0817

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE COUNTY OF DU PAGE, ) Appeal from the Circuit

) Court of Du Page County.

Plaintiff-Appellee,
 )

)

v. ) No. 05--CH--1060

)

THEODORE D. GAVRILOS, GEORGIA B. )

GAVRILOS, and THEODORE D. GAVRILOS )

and
 GEORGIA B. GAVRILOS as Trustees
 )

under
 the terms and provisions of a certain
 )

Trust
 Agreement dated March 22, 1996, ) 

and known as the Theodore D. Gavrilos and ) 

Georgia B. Gavrilos Trust,
 ) 

)

Defendants ) Honorable

) Bonnie M. Wheaton
,

(Picture Perfect, Inc., Defendant-Appellant). ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

Plaintiff, 
the
 County of Du Page, filed a four-count complaint for injunctive relief alleging that 
the
 
business operations of defendant, Picture Perfect, Inc., 
commonly known as "One In A Million," constitutes an "Adult Business Use" as defined by 
the
 Du Page County zoning ordinance, and that 
the
 operation of an adult business use on 
the
 subject property violates several location restrictions of 
the
 Du Page County zoning ordinances.  The County subsequently petitioned 
the
 trial court for a temporary restraining order (TRO).  D
efendant
 responded with a motion to strike 
the
 petition; a motion to strike 
the
 affidavit of Paul Hoss, an employee of 
the County's zoning division; three counteraffidavits; and an answer to 
the
 petition, filed in 
the
 alternative to 
the
 motion to strike.  Following a hearing on 
the County
's petition, 
the
 trial court issued a TRO.  Defendant filed this interlocutory appeal (188 
Ill. 2d
 R. 307(a)(1)) contesting 
the
 TRO.  Defendants Theodore D. Gavrilos, Georgia B. Gavrilos, and Theodore D. Gavrilos and Georgia B. Gavrilos,
 
as trustees under the terms and provisions of a
 certain trust agreement dated March 22, 1996, and known as the Theodore D. Gavrilos and
 Georgia B. Gavrilos Trust, 
are not parties to 
the
 appeal.

BACKGROUND

All four counts of 
the County
's
 complaint allege 
that 
defendant
's use of 
the
 premises constitutes an "Adult Business Use" in violation of Du Page County zoning ordinances.  
Count I alleges a violation of an adult business use in a B-2 zoning district. 
 Du Page County Zoning Ordinance §§37--8.2--1, 37--8.2--2 (____)
.  Counts II, III, and IV allege that 
defendant
 
violates 
the
 ordinances because 
it uses 
the
 premises as an adult use and the
 premises are located within (count II) 
1,000 feet from 
the
 property line of a residentially zoned parcel; (count III) 1,000 feet from 
the
 property line of a school; and (count IV) 1,000 feet from 
the
 property line of an active recreational facility, an Addison Park District golf course.  Du Page County Zoning Ordinance §37--4.16--2 (____)
. 

Section 37--3.2 of the Du Page County Zoning Ordinance (Du Page County Zoning Ordinance, §37--3.2 (____))
 
defines adult business use as:

"The use of property for 
the
 operation of a Massage Parlor and/or Bathhouse, or any use of which a significant or substantial portion involves an activity distinguished or characterized by its emphasis on matters depicting, describing or relating to Specified Sexual Activities or Specified Anatomical Areas, including but not limited to 
the
 operation of Adult Bookstores and/or Video Store, Adult Mini-Motion Picture Theater, Adult Motion Picture Theater, Adult Motion Picture Arcade, Adult Motel, Adult Card and Gift, or Novelty Store.  For 
the
 purposes of this Ordinance an Adult Business Use shall not be deemed a retail business, recreational or social facility, accessory use or general use."

The County attached to 
the
 petition for TRO affidavits of three undercover Addison policemen, which set forth specific and detailed allegations 
in support of 
the County
's contention that 
the
 business known as "One in A Million" operated as an adult use as defined by 
the
 zoning ordinance.
  The three police officers conducted undercover investigations on four random visits over a four-month period.  
The officers had sessions with three employees that all involved similar activities that were offered to 
the
 officers.
  The respective employee would offer to do a session either topless and wearing a G-string, nude, or with a "porno" dance.  The prices offered for these options were similar.  In each instance, 
the
 employee removed all of her clothing and either masturbated or simulated an act of masturbation, and fondled and touched her breasts and vagina in a sexual or erotic manner.  In addition, 
the employees by their words or conduct directed or encouraged 
the
 officers to masturbate as part of 
the
 session while 
the
 officers observed 
the
 employees' performance.  
One employee suggested at 
the
 end of 
the
 session that there would be more explicit sexual activity available on subsequent visits after 
the
 employee came to know 
the
 officer.  None of 
the
 officers saw any photographic equipment or indication that 
the
 business was engaged as a photography studio. 

In addition to 
the
 officers' affidavits, 
the County
 also attached to 
the
 petition 
the
 affidavit of Paul Hoss, 
the
 zoning coordinator for the Du Page County Department of Economic Development and Planning, who performed code-related inspections and conducted zoning reviews for certain permit applications made with 
the County.  He visited 
defendant
's premises to conduct a code enforcement inspection on July 27, 2005.  He was familiar with 
the
 investigations conducted by 
the
 Addison police department and 
the
 Du Page County sheriff's office prior to his inspection of 
the
 premises.  H
e reviewed 
the
 public records kept and maintained by 
the County for 
the
 premises.  Based on his review, he verified that 
the
 premises are located in a B-2 zoning district and that 
the
 property is located within 1,000 feet of residentially zoned property, within 1,000 feet of a public grade school, and within 1,000 feet of an active recreation area.  Hoss personally reviewed 
the
 advertisements for "One In A Million" in 
the
 July 2005 edition of "The Gentlemen's Pages" publication, and 
the
 advertisements for "One In A Million" depicted at
 its
 website, which were attached as copy.
  Based on 
the
 advertisements and his inspection of 
the
 site, he opined that "One In A Million" is an adult business use as defined and regulated by 
the
 zoning ordinance and that it was not a permitted use on 
the
 property under 
the
 County's zoning ordinance provisions.

Defendant contended below as it does on appeal that 
its property is identified and used as a photography studio
.  Defendant filed a motion to strike 
the
 petition for TRO, arguing that 
the
 petition was insufficient as a matter of law and should be struck because, among other things, 
the
 affidavits do not support 
the
 conclusion that only four random incidents of sexually-explicit conduct constitute a significant portion of 
the
 business operations of 
defendant
.   Defendant argued that 
from 
the
 facts it cannot be inferred that a significant or substantial portion of 
the
 use of 
the
 premises is for 
the
 prohibited activity
.

Defendant filed three counteraffidavits.  The first, filed by Tina Fouts, 
the
 president of 
defendant
, averred that 
defendant
 was incorporated as a "photography/modeling studio" and has remained and is in good standing; that it expended approximately $75,000 in improving 
the
 premises for compliance with 
the
 County ordinances; and
 that it spent in excess of $6,000 in digital photographic equipment, all of which is situated on 
the
 premises.  Fouts stated that at no time since opening for business in 2003 has 
she or defendant
 received any ordinance violation citation or any complaint from any private person or public authority regarding its operation.  Fouts averred that she was on 
the
 premises when Hoss came to visit and at no time did Hoss ask her questions that she failed to answer.

Fouts admitted that 
defendant
 does business as "One In A Million" but denied that it was engaged in activities that would constitute an adult business use.  Fouts further admitted that she was present when one of 
the
 undercover officers was on 
the
 premises but generally denied 
the
 officer's allegations regarding his encounter with her.  Fouts averred that she advised 
the
 officer that 
defendant
 charges $90 for one-hour photographic sessions.  She also averred that she did observe 
the
 officer voluntarily remove his clothes and masturbate on both dates that he was present.  She also observed another undercover officer on another date get naked and masturbate.

In each of the other two counteraffidavits filed, 
the
 affiants similarly denied the allegations of 
the
 undercover officers regarding sexual activity
.  However, 
the
 affiants stated that 
each
 undercover officer they had verbal contact with voluntarily removed his clothes and masturbated and left 
the
 premises.
  Each affiant averred that she is an independent contractor who models for 
defendant
, and each fully described all photography-related services offered by 
defendant
 to 
the
 undercover officers. 

Following a hearing, the trial court found that 
the
 affidavits presented by 
defendant
 were not sufficient to negate 
the
 allegations of 
the County's affidavits that there is a predominantly adult use as defined in 
the County zoning ordinance and that this adult use is in violation of the County's ordinances.  The trial court further found that 
the County
 has set forth an ascertainable right, namely, 
the
 right of 
the
 citizens of 
the County
 
to have 
the
 zoning ordinances complied with by 
all persons and businesses.  The court also found that 
the County
 
established that the
 schools, recreational uses, and residences that are within 
the
 prohibited distance in 
the
 zoning ordinances
 would suffer irreparable injury if a TRO were not entered
.  The court further
 found that 
the County
 has established a likelihood of success on 
the
 merits when 
the
 matter goes to a full hearing and that there is no adequate remedy at law and that no fines could be assessed that would mitigate 
the
 irreparable injury.  Accordingly, 
the
 court issued a TRO prohibiting 
defendant
 from operating at 
the
 subject premises until 
the
 matter could be brought to a full hearing.  Defendant timely brought this interlocutory appeal.

ANALYSIS

Defendant first argues that 
the County
's petition, standing alone, fails to set forth sufficient grounds for relief because it fails to state adequate facts to establish 
the
 zoning ordinance violations for which 
the
 TRO is sought and, therefore, it is materially insufficient as a matter of law.  We disagree for 
the
 following reasons.  

Defendant's argument ignores those parts of 
the County
's petition that specifically reference 
the
 allegations
 of 
the
 complaint.  Further, we agree with 
the County
 that 
the
 argument appears to hold 
the County
's petition to a standard of pleading and proof somewhat akin to a trial on 
the
 merits.  Even assuming, 
arguendo
, that 
the County
's petition is insufficient, 
the
 defect was remedied by 
the
 trial court's ability to take judicial notice of pleadings on file and to consider such matters as part of 
the
 proceedings.

In Illinois, "where a statute expressly authorizes injunctive relief to enforce 
the
 provisions of 
the
 statute, 
the
 general rules of equity requiring a showing of a lack of an adequate remedy at law and irreparable injury need not be shown."  
People v. Fiorini
, 143 
Ill. 2d
 318, 346 (1991).  Therefore, it is well established that where a governmental agency is authorized to seek injunctive relief, it is not necessary to plead or establish 
the
 traditional equitable elements necessary to obtain an injunction.  
County of Kendall v. Rosenwinkel
, 353 
Ill. App. 3d
 529, 539 (2004).  In 
the
 enforcement of any statute or ordinance, there is a presumption that 
the
 public is harmed when 
the
 statute or ordinance is violated.  
Rosenwinkel
, 353 
Ill. App. 3d
 at 539, citing 
Midland Enterprises, Inc. v. City of Elmhurst
, 226 
Ill. App. 3d
 494, 504 (1993).  

When seeking injunctive relief under 
the
 common law, 
the
 party seeking a preliminary injunction or TRO must establish facts demonstrating 
the
 traditional equitable elements that (1) it has a protected right; (2) it will suffer irreparable harm if injunctive relief is not granted; (3) its remedy at law is inadequate; and (4) there is a likelihood of success on 
the
 merits.  
Houseknecht v. Zagel
, 112 
Ill. App. 3d
 284, 291-92 (1983).  In either case, 
the
 party seeking relief is not required to make out its entire case that would entitle it to relief on 
the
 merits; rather, it need show only that it raises a " 'fair question' " about 
the
 existence of its right and that 
the
 court should preserve 
the
 status quo until 
the
 case can be decided on 
the
 merits.  
Buzz Barton & Associates, Inc. v. Giannone
, 108 
Ill. 2d
 373, 382 (1985).

Further, section 11--101 of 
the
 Code of Civil Procedure (735 ILCS 5/11--101 (West 2004)) allows 
the
 trial court to grant a TRO based upon 
the
 specific facts shown in 
the
 affidavits accompanying 
the
 petition or in a verified complaint on file.  The statute does not prohibit 
the
 trial court from considering both 
the
 affidavits and verified complaint if both are available, as in this case.

Here, 
the County
 pursued its right to relief under 
the
 statutory authority permitting counties to seek injunctive relief to abate violations 
of its zoning ordinances.  See 55 ILCS 5/5--12017, 5--13004 (West 2004).  Because 
the County
 is authorized by statute to enjoin violations of its zoning ordinances, 
the County
 need show only that its ordinance was violated.  Notwithstanding this standard, 
the County
's petition also asserts that 
the County
 had established sufficient facts to establish each traditional element for injunctive relief under 
the
 common law.

In this case, 
the
 verifications for 
the
 complaint were executed by 
the
 same persons who provided affidavits for 
the
 petition: Paul Hoss and 
the
 three Addison police officers.  The affidavits essentially reiterated 
the
 allegations verified by each person in 
the
 complaint, but in greater detail.  The complaint recited relevant portions of 
the
 zoning ordinance, and 
the
 actual text was attached to Hoss's affidavit as one of 
the
 materials he relied upon in giving his affidavit.

The undisputed facts established, 
inter
 
alia
, 
the
 location of 
defendant
's business, the site's zoning classification, and 
the
 proximity of 
the
 business to certain residentially zoned parcels, a school, and a public golf course.  The contested evidence involved 
the
 four inspections conducted by 
the
 undercover officers, which showed that 
the
 "One In A Million" business operated as an adult use consistently
.  The affidavits indicated that three different employees offered nearly identical services on four occasions to 
the
 three investigating officers.  Hoss's affidavit also avers facts relating to 
defendant
's own public admissions concerning 
the
 nature of its business operations in holding 
itself out to 
the
 community through 
Internet and magazine advertisements.

In support of its argument that 
the County
 fails to allege that 
defendant
's business operations constituted an adult business use, 
defendant
 characterizes 
the
 officers' investigations as uncovering little more than four isolated incidents since 2003.  Although 
the
 four incidents spanned a three-month period, from April to July 2005, there is no basis for inferring that had 
the
 police investigated more, they would have observed anything different.  We agree with 
the County
 that what 
the
 officers attest to, and what 
defendant
 does not address, is 
the
 absence of any other conforming business use in which 
the
 subject business might be engaged.

Based on 
the
 foregoing, we conclude that 
the
 trial court did not abuse its discretion in determining that 
the County
 adequately established, for 
the
 purpose of 
the
 pending petition, that 
the
 business operations of "One In A Million" caused that establishment to fall within 
the
 zoning ordinance's definition of adult business use.  Based on 
the
 applicable law, the County need not prove 
the
 merits of its claims at this stage of 
the
 process.  T
he County
 presented factual evidence as required for a TRO hearing and, accordingly, 
the
 trial court did not abuse its discretion in arriving 
at its determination that 
the
 present circumstances warranted entry of a TRO.  As such, 
the County
's petition, standing alone, is sufficient as a matter of law, because 
the
 petition and its accompanying affidavits and supporting materials set forth sufficient grounds to establish 
the County
's right to injunctive relief.

Defendant contends that 
the
 trial court abused its discretion when it found that its response to 
the County
's petition failed to create a factual dispute as to 
the
 alleged zoning violations.  
Defendant cites 
Passon v. TCR, Inc.
, 242 
Ill. App. 3d
 259 (1993), for 
the
 proposition that, where material allegations of an application for a TRO are controverted, 
the
 TRO must be denied and 
the
 case set for hearing.  However, 
the
 trial court found that 
the
 affidavits presented 
were not sufficient to negate 
the
 allegations of 
the County
's affidavits that there is a predominately adult use of 
the
 premises as defined in 
the County zoning ordinance and that this adult use was in violation of those ordinances.
  The trial court also believed that 
defendant
's affidavits, at best, showed that, even if 
defendant
 were actually engaged in a photography studio activity, that use was still an adult use.  

Although there is no Illinois case specifically addressing 
the
 trial court's ability to assess conflicting affidavits in support of injunctive motions, we see no reason why 
the
 trial court should not be in 
the
 best position to
 judge 
the
 credibility of 
the
 affidavits filed in support of 
the
 application for a preliminary injunction, as it is the trial court's province to resolve any conflicts.  See 
Whyte v. Schlage Lock Co.
, 101 Cal. App. 4th 1443, 1450, 125 Cal. Rptr. 2d 277, 283 (2002) (the trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts).  While 
defendant
's counteraffidavits may have created a question of fact that would preclude a summary judgment, that is not 
the
 relief that 
the
 County seeks here.  The entry of a TRO requires only 
the
 showing of 
the
 likelihood of 
success on 
the
 merits, and 
the
 likelihood of success might involve 
the
 weighing of evidence, including affidavits.

Here, 
the
 trial court could have reasonably concluded that there was a credibility issue with 
defendant
's three affidavits.  The County argued a number of grounds on which 
the
 trial court may have premised its findings.  The County argued that 
defendant
's affiants would be biased in view of 
the County
's action to discontinue a business operation that was potentially making upwards of $500 per customer per one-hour session.  Defendant's affiants must have understood that a resolution of this case in 
the County
's favor could cause 
the
 closure of its lucrative setup or, at a minimum, significantly affect 
the
 manner in which it conducted its business.  According to the affidavits, if they are to be believed, each of 
the
 undercover officers, during 
the
 course of an official investigation at a business under video surveillance and at a risk of loss of his job and personal embarrassment, immediately commenced masturbating as soon as he walked into 
the
 premises.  The trial court could have reasonably concluded that 
the
 matters attested to were not readily plausible for a variety of reasons.

Additionally, 
the County
 argued that 
defendant
's affidavits describing "One In A Million" as being a photography studio and devoid of illicit sexual activity could not be reconciled with 
defendant
's public admissions stated at its Internet site or contained in its advertisements.  Furthermore, none of 
the
 affidavits refute 
the
 allegations contained in 
the
 complaint or 
the
 officers' allegations that each of 
the
 employees appeared in a state of nudity before each of 
the
 detectives.  

It is axiomatic that 
the
 party challenging 
the
 trial court's order has 
the
 burden of showing an abuse of discretion.  The trial court has broad discretionary powers to grant or deny a request for an injunction.  
Cannon v. Whitman Corp.
, 212 Ill. App. 3d 79, 81-82 (1991).  In this case, 
defendant
 has not shown 
that the
 trial court abused
 its discretion in failing to give 
equal weight to defendant
's affidavits
.  Accordingly, we reject 
defendant
's argument.

Defendant last contends that 
the
 trial court abused its discretion when it ordered it to cease and desist all business operations, including 
the
 use of 
the
 photographic studio, at 
the
 subject property.  Thus, 
defendant
 asserts that 
the
 TRO exceeds 
the
 scope of 
the
 relief sought in 
the County
's complaint.  We disagree.

Defendant
 cannot complain that 
the County
 asked for something less than what 
the
 trial court ordered.
  Paragraph 36 of 
the County
's complaint alleges that no aspect of 
defendant
's use of 
the
 subject property is authorized as a permitted or conditional use of 
the
 B-2 zoning district.  Paragraph 
D
 of each prayer in each count of 
the
 County's complaint seeks an order restraining all business activity on 
the
 subject property until such time as 
defendant
 can demonstrate its compliance with 
the
 zoning ordinance and all applicable licenses, permits, and approvals. 

Further, 
defendant
 cannot complain that 
the
 trial court erred in restoring 
the
 status quo by failing to permit 
it
 to continue to operate as a photography studio.  "The status quo is defined as 'the last actual, peaceable, uncontested status which [preceded] the pending controversy.' "  
Steel City Bank v. Village of Orland Hills
, 224 Ill. App. 3d 412, 417 (1991), quoting 
Martin v. Eggert
, 174 Ill. App. 3d 71, 77 (1988).  Between a zoning jurisdiction and a property owner or tenant, 
the
 last peaceable state of existence between those parties is a state without a zoning violation.  Few Illinois cases squarely address what condition constitutes 
the
 status quo in a zoning dispute for 
the
 purpose of a TRO.  See, 
e.g.
, 
Kolstad v. Rankin
, 179 
Ill. App. 3d
 1022 (1989) (appellate court need not consider denial of property owners' request for TRO to restrain gun range to abate zoning violations since ample other grounds for granting TRO were present); 
Hartlett v. Dahm
, 94 
Ill. App. 3d
 1 (1981) (private property owners' suit to enforce ordinance could compel neighbor to cease zoning violations by way of a permanent injunction, although injunction entered was invalid in form).  

Other state courts have considered 
the
 issue of what constitutes 
the
 status quo in a zoning dispute for 
the
 purpose of a TRO.  For example, in 
San Miguel v. City of Windcrest
, 40 S.W.3d 104, 107 (Tex. App. 2000), 
the
 city sought a TRO to prevent home owners from operating a group home at their residence, 
which 
would require 
the
 home owners to remove two of four elderly persons living at their home.  The appellate court noted: "In making their assertion that 
the
 granting of 
the
 temporary injunction destroys 
the
 status quo, it appears 
the
 [home owners] understand 
the
 status quo to be 
the
 situation at 
the
 time 
the
 order was sought.  Where 
the
 acts sought to be enjoined, however, violate an expressed law, 'the status quo to be preserved could never be a condition of affairs where 
the
 
respondent
 would be permitted to continue 
the
 acts constituting 
that violation.' " 
San Miguel
, 40 S.W.3d at 109, quoting 
Houston Compressed Steel Corp. v. State
, 456 S.W.2d 768, 773 (Tex. Civ. App. 1970); see also 
City of Stamford v. Kovac
, 228 Conn. 95, 102, 634 A.2d 897, 900 (1993), citing 
Burton v. Celentano
, 134 Ariz. 594, 658 P.2d 247 (1982) (property owners who diverted the natural flow of a waterway could be compelled to undertake restorative acts under a TRO).

T
he
 function of a preliminary injunction is not merely to contain ongoing damage but to prevent prospective damage.  The County's complaint and petition each set forth grounds upon which 
the
 trial court could reasonably conclude that ordering "One In A Million" to close was 
the
 only means of ensuring compliance with 
the
 zoning ordinance.  As noted by 
the
 trial court, even operating as a photography studio, 
the
 business could, and perhaps was likely to, continue to function as an adult business use.  We do not find that 
the
 trial court abused its discretion by failing to permit 
defendant
 to continue to operate as a photography studio.  Accordingly, we do not find that 
the
 TRO is broader in scope than 
the
 relief sought.

We have reviewed 
defendant
's remaining contentions and find them to be without merit.  

For 
the
 preceding reasons, we affirm 
the
 decision of 
the
 circuit court of Du Page County.

Affirmed.

BOWMAN and CALLUM, JJ., concur.